## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLENA M. BAZEWICZ, | |
| Plaintiff, | CIVIL ACTION NO. 3:21-cv-00504 |
| v. | (SAPORITO, M.J.) |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Marlena Bazewicz, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income, pursuant to 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I.   BACKGROUND

On April 30, 2014, Bazewicz protectively filed a claim for supplemental security income, asserting a disability onset date of June 1, 2012. (Tr. 39.) Due to the nature of the claim, the relevant onset date is the filing date, April 30, 2014. The claim was initially denied by state

agency reviewers on September 26, 2014. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on September 19, 2016, before administrative law judge Frank Barletta. In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Josephine A. Doherty. The plaintiff was represented by counsel at the hearing.

On December 19, 2016, ALJ Barletta denied Bazewicz's application for benefits in a written decision. (Admin. Tr. 49.) The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on December 14, 2017, making ALJ Barletta's December 2016 decision the final decision of the Commissioner. Bazewicz timely filed her complaint in this court, and this court remanded the case to the Commissioner on April 27, 2020, so the Commissioner could resolve constitutionality issues after considering the United States Court of Appeals for the Third Circuit's decision in *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020) and the United States Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). (Tr. 834-40).

The Appeals Council then remanded the case to an administrative law judge Edward L. Brady ("the ALJ"). (Admin. Tr. 760, 841-44.)[1] The plaintiff requested an administrative hearing, which was subsequently held by telephone on November 10, 2020, before the ALJ. In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Dr. Nadine Henzes. The plaintiff was represented by counsel at the hearing.

On December 16, 2020, the ALJ denied Bazewicz's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Bazewicz was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Bazewicz had not engaged in substantial gainful activity since April 12, 2014 to February 27, 2018. At step two, the ALJ found that between April 12, 2014 and February 27, 2018, Bazewicz had the severe impairments of: a

---

[1] Although the plaintiff also filed an application for Supplemental Security Income on February 28, 2018, and she was found to be disabled as of February 28, 2018, this case is independent of that case and will not disturb the outcome of that case. (Admin. Tr. 761).

seizure disorder, gastritis, asthma, obesity, bipolar disorder, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), schizoaffective disorder, conversion disorder, and a history of a learning disorder. At step three, the ALJ found that Bazewicz did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Bazewicz's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Bazewicz had the RFC to perform "medim work" as defined in 20 C.F.R. § 416.967(c),[2] with the following limitations:

> The claimant was limited to no more than occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs, but may never climb ladders[,] ropes or scaffolds but can occasionally climb ramps or stairs. In addition, the claimant should avoid work at unprotected heights, and around dangerous

---

[2] The Social Security regulations define "medium work" as a job that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

> moving machinery. Further, the claimant could have detailed but uninvolved work generally described as simple, routine, and repetitive. Moreover, she was limited to occasional changes in workplace routine and setting, frequent interaction with coworkers and supervisors, and occasional interaction with the public. Lastly, the claimant should avoid more than occasional extreme temperatures, humidity, fumes, odors, dusts, and gases.

(Tr. 767.)

In making these factual findings regarding Bazewicz's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, the ALJ found that the plaintiff has no past relevant work. (Tr. 774.)

At step five, based on the RFC and on testimony by the vocational expert, the ALJ concluded that Bazewicz was capable of performing work

as a Box Maker, DOT # 794.684-014,[3] which is a medium, unskilled position, with an SVP of 2, with approximately 235,000 jobs in the national economy. Based on this finding, the ALJ concluded that Bazewicz was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on July 6, 2020, making the ALJ's December 2020 decision the final decision of the Commissioner subject to judicial review by this court.

Bazewicz timely filed her complaint in this court on August 4, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.  DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See*

---

[3] *See* DICOT 794.684-014, 1991 WL 681311 ("box maker, paperboard").

*generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Bazewicz asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of medical opinions, specifically the assessment of the treating psychiatrist and the assessment of the consultative psychologist, and because the ALJ failed to include all of the plaintiff's credibly established impairments in a hypothetical for the vocational expert. (Doc. 17, at 3-4). Bazewicz asserts that, if the ALJ had credited the treating or consultative opinions, she would have been found disabled.

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of two medical opinions—the plaintiff's treating psychiatrist and the state agency consultative psychologist. In his evaluation, the ALJ rejected the opinions of the treating physician and the state agency consultative examiner inasmuch as each opined that the plaintiff has marked and

extreme limitations. (Tr. 772-73.) At step three of the sequential evaluation process, the ALJ considered whether the combination of the claimant's medically determinable impairments met the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, a plaintiff can only be found disabled due to mental health impairments if the plaintiff has, among other things, one extreme or two marked limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Listings Part 12. Here, both the treating physician and the consultative examiner opined that the plaintiff has marked limitations in carrying out detailed or complex instructions and in relating to or working with or near supervisors, coworkers, or the public. (See Tr. 342-43, 755-56.) Therefore, if the ALJ had assigned controlling weight to the opinion of the treating physician or the opinion of the consultative examiner, the plaintiff would have been found disabled.

As a preface, we note that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706

(3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

However, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn Soc. Sec. Rul. 96–2p, 1996 WL 374188, *5 (1996)).

"Medical opinions are statements from acceptable medical sources

that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (applicable to claims filed before Mar. 27, 2017). "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). But for claims, like Bazewicz's, filed before March 27, 2017, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). The applicable regulations provide that if "a treating source's medical opinion on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).

Under the Social Security regulations in effect at the time of the ALJ's decision in this case, a "treating source" was a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. "If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source medical opinion is nevertheless entitled to deference." *Mullins v. Berryhill*, No. 3:17-CV-01042, 2018 WL 5649926, at *8 (M.D. Pa. Sept. 14, 2018), *report and recommendation adopted*, No. 3:17CV1042, 2018 WL 5631378 (M.D. Pa. Oct. 31, 2018) (citing Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4).

Under the relevant regulations, when the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with

the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id.* at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)). "[L]ay reinterpretation of medical evidence is not 'inconsistent ... substantial evidence' sufficient to reject an uncontradicted treating source medical opinion." *Mullins*, 2018 WL 5649926, at *8, *report and recommendation adopted*, 2018 WL 5631378 (quoting *Tilton v. Colvin*, 184 F. Supp. 3d 135, 141 (M.D. Pa. 2016).

## B. The ALJ's Analysis of the Medical Opinions

The ALJ considered the opinion of the treating psychiatrist, Dr. Michael Campbell, in this case and assigned it "partial weight." The ALJ found Dr. Campbell's "opinion regarding the extreme and marked limitations" to be

> not consistent with, or supported by[,] the longitudinal record, but his assessment regarding the moderate limitations [is] consistent and supported by the record. Specifically, the record reflected no more than mild to moderate limitations on mental status examinations, with many findings consistently noted as normal. Further, her treatment was conservative, with no referral by any of her providers for any form of intensive mental health intervention during the relevant time. Moreover, the doctor does not cite to any evidence in support of his opinion, and the assessment is not consistent with his examinations and evaluations, where he generally indicates a GAF of 50-60. For those reasons, the opinion is given partial weight.

(Tr. 773.)

The form on which Dr. Campbell gave his opinions instructs the opining medical source to base the opinion on his examination of how the claimant's mental and emotional capabilities are affected by the impairments. (Tr. 755-56.) Dr. Campbell checked boxes on the form to indicate one mild limitation, several moderate limitations, and *marked limitations* in maintaining attention for a two-hour segment, working in

coordination with or proximity to others without being unduly distracted, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, and carrying out detailed instructions. Dr. Campbell also found *extreme limitations* in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. As explanation, Dr. Campbell stated only:  "Significant [illegible word][4] symptoms of Bipolar, PTSD, Anxiety, Learning Disorder[,] Low IQ." (Tr. 755.) Dr. Campbell stated that he thought the plaintiff's impairments would cause her to be absent from work more than three times per month, and that the opinions in the report were based on clinical observations, mental status examinations, psychiatric evaluations, review of therapist's clinical notes, review of prior psychiatric records, and statements from the plaintiff.

The ALJ also considered the opinion of the consultative examiner,

---

[4] The Plaintiff suggests that the word used is "uncontrolled," although "recorded" is another possibility. (Doc. 17, at 9.)

Dr. Charles LaJeunesse, in this case and assigned it "partial weight." The ALJ found Dr. LaJeunesse's opinion that the plaintiff had "no limitation regarding her ability to understand, remember, and carry out simple instructions, as well as to make simple judgments on work related decisions" to be

> consistent with, and supported by[,] the longitudinal record, which reflects conservative treatment, with no referral by any of her providers for any form of intensive mental health intervention during the relevant time. However, when considering that the mental status examinations generally reflect no more than mild to moderate findings, along with the claimant's conservative treatment, it is clear that the marked limitations are based on claimant's self-report, and not on objective evidence.

(Tr. 772.)

Dr. LaJeunesse checked boxes on a form—different from the form completed by Dr. Campbell—to indicate *no limitations* in the claimant's ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. (Tr. 342.) Dr. LaJeunesse indicated *marked limitations* in the claimant's ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and

coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 342-43.)

The ALJ asserted that Dr. LaJeunesse's opinion has partial weight because it is based upon the plaintiff's self-report. In the first place, this reasoning must be suspect because of the nature of the plaintiff's impairments. "[I]n the case of mental health impairments, . . . a medical source's opinion which relies on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions by nature are largely diagnosed on the basis of a patient's subjective complaints." *Lex v. Berryhill*, No. 3:17-CV-2204, 2018 WL 4212413, at *8 (M.D. Pa. Sept. 4, 2018) (citing *Schickel v. Colvin*, No. 14 C 5763, 2015 WL 8481964, at *11 (N.D. Ill. Dec. 10, 2015); *Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012)). However, even if mental health impairments did not cause the plaintiff's subjective complaints to be more useful to the consultative examiner, Dr. LaJeunesse did list some objective tests as support for his opinion. Dr. LaJeunesse explained that the plaintiff is cognitively challenged and listed specific indicators such as the claimant's inability to remember more than "4 digits forward and 3 digits backward" and inability to do object assessments when time had

passed since the first instruction or performance. (Tr. 339, 342.) Dr. LaJeunesse also explained that the plaintiff has no friends (Tr. 340), spoke in a loud and pushed manner with difficulty finding words (Tr. 339), gets anxious around strange people (Tr. 343), and cannot drive (Tr. 343). Based on these explanations, it is *not* "clear that the marked limitations are based on claimant's self-report, and not on objective evidence," despite the ALJ so finding. (Tr. 772.) Therefore, we will disregard the ALJ's assertion that this medical opinion may be assigned reduced weight because it is based upon the plaintiff's self-reported symptoms.

The ALJ also reviewed the prior administrative findings of Dr. Melissa Diorio, stating:

> As for the opinion evidence, in regards (sic) to claimant's mental functioning, the undersigned considered the state agency mental assessment of Dr. Melissa Diorio, and gave it partial weight (Exhibit B2A). Dr. Diorio's assessment under the prior mental health listings reflects moderate limitations in all areas. She further indicated that claimant was able to perform simple, routine, repetitive work in a stable environment. Additionally, she indicated claimant could understand, retain, and follow simple instructions, such as one and two-step tasks, and was moderately limited in her ability to interact with supervisors, coworkers and the public. Although this opinion was rendered under the prior mental health listings, the undersigned nonetheless finds this opinion probative and partially supportive of the assessment

reached in this decision concerning claimant's limitations in functioning as evaluated under the current mental health listings. That said, as it pertains to periods of decompensation, as this is no longer considered under the present rules, and the limitation to one and two-step tasks, this portion of the assessment is not consistent with or supported by the longitudinal record. Specifically, the record reflects no more than mild to moderate findings on mental status examination, with many findings noted to be consistently unremarkable. Moreover, the treatment was conservative, and there was no indication that claimant was referred for any more intensive treatment during the relevant time. Lastly, there was nothing in the record to support limiting claimant to one to two-step tasks, when she was able [to] prepare simple meals, do light housework, do work searches, and play games with her children, all tasks requiring more than one to two steps. Therefore, for these reasons, the opinion was given partial weight.

(Tr. 772.)

In this case, the ALJ rejected the treating physician's opinion with regard to all limitations which were marked or extreme. In other words, the ALJ rejected the treating physician's opinion to the extent that the treating physician's opinion would lead to a finding of disability. *See* 20 CFR § 416.902(h). But the ALJ also rejected indications of disability found in *all three* medical opinions. Dr. Campbell opined that the plaintiff had marked limitations in carrying out detailed instructions. (Tr. 756.) Dr. LaJeunesse opined that the plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions and

making judgments on complex work-related decisions. (Tr. 342.) Although Dr. Diorio opined that the plaintiff was "moderately" limited in the "ability to understand and remember detailed instructions," Dr. Diorio explained, "The claimant can perform *simple, routine, repetitive* work in a stable environment. The claimant can understand, retain, and follow *simple* job instructions, i.e., perform one and two step tasks. The claimant's basic memory processes are intact." (Tr. 124 (emphasis added).) Dr. Diorio further clarifies later that "[t]he claimant is able to carry out *very short and simple* instructions." (Tr. 124 (emphasis added).) When answering the question of the plaintiff's "ability to understand and remember *detailed* instructions," all of Dr. Diorio's responses focus on the necessity of *simple* tasks for the plaintiff. But Dr. Diorio had already answered the question of the plaintiff's "ability to understand and remember *very short and simple* instructions." (Tr. 124.) Therefore, when Dr. Diorio repetitively used the word "simple" in her answers, we can only interpret her answer to either mean that the plaintiff is limited to simple work tasks—in which case *all* medical opinions indicated that the plaintiff is limited to simple work tasks and has at least a marked

limitation[5] in complex work tasks—or that Dr. Diorio did not actually answer the question of the plaintiff's "ability to understand and remember *detailed* instructions." Whether we interpret Dr. Diorio's explanation to mean that Dr. Diorio found the plaintiff unable to complete detailed tasks or to mean that Dr. Diorio did not answer the question of plaintiff's ability to complete detailed tasks, all medical opinions about the plaintiff's ability to complete detailed or complex tasks indicate that the plaintiff has at least a marked limitation. In his opinion, the ALJ found that the plaintiff had a moderate limitation in remembering and applying information and in concentrating and completing tasks. (Tr. 765-766.) The ALJ lacked any basis for such a finding. Under the applicable regulations, an ALJ is only permitted to disregard the treating physician's opinion (here, that the plaintiff had a marked limitation in remembering and applying information), when the

---

[5] A "marked limitation" is one which reflects "a substantial loss in the ability to effectively function" in that skill area. Dr. Diorio indicated a moderate limitation, which means "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily." Here, Dr. Diorio indicated that the plaintiff is able to do *simple* tasks when asked about the plaintiff's ability to do *detailed* tasks, she indicated that the plaintiff is unable to do detailed tasks, or, in the alternate, entirely failing to answer the question of the plaintiff's ability to do detailed tasks.

treating physician's opinion is inconsistent with other substantial evidence. An ALJ's lay interpretation of the medical evidence is not inconsistent substantial evidence. *Mullins*, 2018 WL 5649926, at *), *report and recommendation adopted*, 2018 WL 5631378 (quoting *Tilton*, 184 F. Supp. 3d at 141 ("[L]ay reinterpretation of medical evidence is not 'inconsistent ... substantial evidence' sufficient to reject an uncontradicted treating source medical opinion."); *Morales*, 225 F.3d at 317-18. Here, the ALJ rejected the opinions of the treating physician and the consultative examiner without compelling contradictory evidence. For this reason alone, remand may be appropriate. However, we have further reasons to remand.

Under the applicable regulations, when an ALJ does not give controlling weight to a treating physician's medical opinion, the ALJ must still evaluate that opinion on the basis of the treatment relationship, the supportability, the consistency, the specialization of the treating source, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6). Here, despite denying the treating physician's opinion controlling weight, the ALJ did not discuss the length, frequency, nature, or extent of the treatment relationship and did not discuss the

specialization of the treating source. (See Tr. 763-74.) For this additional reason, we are unable to find the ALJ's decision supported by substantial evidence.

Further, as explanation of his rejection of marked and extreme limitations in the medical opinions, the ALJ provided only the following additional reasons for giving each opinion partial weight: Some normal mental status upon examination, the plaintiff's ability to do certain household tasks and personal activities at home, conservative treatment without referral for intensive mental health intervention, and GAF scores "generally" in the range of 50-60. (Tr. 772-73.) However, having some normal mental statuses upon examination and being able to do certain household tasks are not proof that all medical opinions were inaccurate. Evidence of a plaintiff's behavior and abilities at home or during medical appointments is considered poor evidence of a plaintiff's abilities and behaviors under the stress of the workplace.

> For a claimant who has a mental impairment like "an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." *Morales* specifically directs that a treating mental health provider's "opinion that [the claimant's] ability is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an

> environment absent of the stresses that accompany the work
> setting."

*Lex*, 2018 WL 4212413, at *8 (quoting *Morales*, 225 F.3d at 319).

Therefore, we cannot find the ALJ's mention of the plaintiff having some normal mental status upon examination and the ability to do certain household tasks and personal activities at home to constitute substantial evidence to justify the ALJ's rejection of the marked and extreme limitations in the medical opinions.

Although the ALJ cites to GAF scores in the range of 50-60 as evidence upon which the ALJ rejects the marked and extreme limitations in the medical opinions, the ALJ acknowledges that the plaintiff actually has GAF scores as low as 40, and the ALJ assigns the GAF scores generally "little weight." We cannot find that evidence is substantial enough to support rejection of marked and extreme limitations in all applicable medical opinions where that same evidence is assigned "little weight" by the ALJ.

Although the ALJ stated conservative treatment without referral for intensive mental health intervention as explanation of his rejection of marked and extreme limitations in the medical opinions, the ALJ fails to state what intensive mental health intervention would be indicative of

marked or extreme limitations. "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Ray*, 2014 WL 1371585, at *18 (quoting 20 C.F.R. § 404.1527(c)(2)) (quoting *Wilson,* 378 F.3d at 544). As it is the sole remaining explanation, we cannot find that this final assertion alone—that the plaintiff is not disabled because the plaintiff did not receive an illusory type of more extreme treatment—is substantial justification for the ALJ's rejection of the marked and extreme findings in the medical opinions.

Accordingly, because the ALJ has provided no substantial evidence to justify his rejection of the marked and extreme limitations included in the treating and consultative medical opinions, we cannot find that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Bazewicz was not disabled is not supported by substantial

evidence and was reached based upon an incorrect application of the relevant law. Accordingly, the Commissioner's decision denying her application for disability insurance benefits will be vacated and the case will be **REMANDED** for further proceedings consistent with this opinion.

An appropriate Order follows.

Dated: September 20, 2022          *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge